**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEMBERLY RENFRO, individually and on behalf of all similarly situated Plaintiffs, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROTARY INTERNATIONAL | ) ) |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Kemberly Renfro ("Kem" or "Ms. Renfro"), by and through her attorneys, brings this action against Rotary International ("Rotary") on behalf of herself and all similarly situated employees of Rotary International. With knowledge as to herself and upon information and belief as to the Class, Plaintiff alleges as follows:

### INTRODUCTION

1.      This is a class action for damages to redress the deprivation of Plaintiff's and the Class's fundamental rights to equal protection under the law, free exercise of their religion, and protection from religious discrimination in employment.

2.      Specifically, Plaintiff Renfro brings this action against Rotary for engaging in wrongful religious discrimination in employment when it denied her reasonable requests for a religious exemption from its COVID-19 vaccine mandate and terminated her after she further refused vaccination. Such misconduct also violated Illinois State law.

3.      Plaintiff Renfro also brings this action on behalf of the entire Class of employees who were similarly wronged by Rotary when it denied their reasonable requests for religious

1

exemptions and terminated their employments outright if they held fast in refusing the vaccination or de facto forced them to be vaccinated against their will while treating them like 'second class employees' by restricting their duties, career opportunities, and working conditions.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the United States Constitution and under a United States federal statute and under 42 U.S.C. § 2000e-5(f) as Defendant violated the provisions of this United States statute.

5.     This Court has further subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this action alleges class action claims where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs." Plaintiff is informed, and believes based on public information, that Rotary employs persons around the country who, therefore, reside in different states, and, based on the misconduct alleged herein, have suffered more than $5,000,000 in damages in the aggregate.

6.     This Court has supplemental subject matter jurisdiction under 28 U.S.C. § 1367 over the Plaintiff's state law claims as they arise from the same set of operative facts and resulted from the same conduct on the part of the Defendant.

7.     This Court may exercise general personal jurisdiction over Defendant due to the fact that Defendant's activities and policies arise from its offices in Evanston, Illinois, and are administered from there, such that Defendant may fairly be regarded as submitting itself to the jurisdiction of the courts in Illinois. Defendant also exercises substantial, systematic, and continuous contacts with Illinois by doing business in Illinois.

2

8.    This Court may exercise specific personal jurisdiction over Defendant in this matter, as Plaintiff's claims arise out of Defendant's activities in Illinois.

9.    Further, Defendant has submitted to jurisdiction in the Northern District of Illinois pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, by: (a) transacting business in Illinois; (b) committing the misconduct alleged herein in Illinois; and (c) conducting its central operations out of Illinois. *See* 735 ILCS 5/2-209.

10.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) and 42 U.S.C. §2000e-5(f) as Defendant committed the statutory violations in this district.

## PARTIES

11.    Plaintiff Kemberly Renfro is a natural person and citizen of Illinois.

12.    Defendant Rotary International is a non-profit corporation organized under the laws of Illinois with its principal place of business at 1560 Sherman Avenue, Evanston, Illinois 60201.

## GENERAL FACTUAL ALLEGATIONS

13.    Defendant Rotary International is a large non-profit organization based out of Evanston, Illinois that promotes a variety of health, educational, and environmental programs and initiatives around the world.

14.    Rotary is most notable around the world for its vaccination programs, especially for its efforts to eradicate polio through universal inoculation.

15.    Rotary also proudly proclaims its commitment to diversity, equity, and inclusion as part of its mission statement:

> At Rotary, we understand that cultivating a diverse, equitable, and inclusive culture is essential to realizing our vision of a world where people unite and take action to create lasting change.

> We value diversity and celebrate the contributions of people of all backgrounds, across age, ethnicity, race, color, disability, learning style, religion, faith,

3

socioeconomic status, culture, marital status, languages spoken, sex, sexual orientation, and gender identity as well as differences in ideas, thoughts, values, and beliefs.

16.     In response to the COVID-19 pandemic that took the world by storm in 2020, Rotary ordered all employees to begin working from home on March 13, 2020.

17.     After vaccinations became widely available in Europe and the United States, Rotary began a "Vaccine Challenge" among its employees to achieve a 95% vaccination rate by August 7, 2021, incentivizing the staff with an additional paid day off if the 95% target was reached.

18.     As an additional incentive, employees who submitted proof of vaccination prior to August 7, 2021 would receive discounted rates on their company insurance premiums for the 2022-2023 policy year.

19.     Rotary planned to have all staff return to the office by September 7, 2021 and required all employees to submit either a proof of vaccination or a religious exemption request by August 7, 2021. According to Rotary, this latter option was for employees that were precluded from receiving vaccinations due to a "legitimate medical objection or a sincerely held religious belief".

20.     Rotary later pushed back the return-to-office date to October 11, 2021 and it imposed a new deadline of October 7, 2021 for proof of vaccination and religious exemption requests

21.     Under Rotary's policies, any employee, including all employees who were denied medical and religious exemptions, that refused COVID-19 vaccinations would be terminated. And for employees that were granted exemptions, they would not be working as *status quo ante pandemic*. Instead, exempted employees would be continually restricted to virtual participation in meetings and denied from returning to their previous workspace or office; instead, they would all

4

be required to work from an *ad hoc* work area set up specifically for them to separate them from vaccinated employees. For example, exempted employees that had previously worked at the One Rotary Center were restricted to a newly established workspace on the 4th floor. All of this restricted their duties and career opportunities.

22.    On August 2, 2021, Rotary sent a reminder email to all staff to upload their proof of vaccination cards or submit an exemption request by October 4, 2021.

23.    On August 10, 2021, John Hewko, the General Secretary and CEO of Rotary International, announced in a company-wide mass email that the Vaccine Challenge had failed since only 93% of the staff submitted a proof of vaccination.[1] He further added that Rotary is regretfully unable to offer an additional paid day off for all employees since "39 of our colleagues did not submit proof of COVID-19 vaccinations by the deadline".

24.    On September 21, 2021, John Hewko announced, in another company-wide email, that the October 11, 2021 date for returning to the office will be pushed back further to January 10, 2022.

## FACTS SPECIFIC TO PLAINTIFF

25.    Kemberly Renfro is a woman, 49 years of age, and resides in Evanston, Illinois.

26.    Ms. Renfro is a deeply religious woman with strongly held beliefs as an independent Christian. She is not a member of any particular church, sect, denomination, or other Christian organization. And even without a pastor or other comparable religious leader to teach and preach the learnings and values of Christianity, Ms. Renfro independently and rigorously studies the Christian Bible and derived a rigid set of rules and principles that she lives by.

---

[1] He also explained that the "handful" of employees who refused vaccination due to "legitimate" health or religious reasons were not considered in the calculations.

27.     One of these strict principles is her rejection of modern medicine in favor of holistic, traditional medical remedies due to the former's use of many chemicals that she sincerely believes as being harmful to her.

28.     Ms. Renfro was employed by Rotary International for almost 15 years and received excellent performance reviews and numerous commendations during her long career with the organization. In fact, she had been promoted just before her wrongful termination.

29.     Like the rest of the staff at Rotary, Ms. Renfro was ordered to work remotely beginning in March of 2020.

30.     Complying with Rotary's vaccine mandate and its plans to return to in-office work, Ms. Renfro dutifully submitted an exemption request on or about August 7, 2021, well before the October 7 deadline.

31.     At 2:39 P.M. on September 27, 2021, Robert J. Luckfield III ("Luckfield"), Rotary's Manager of Global Employee Health & Wellness, sent an email to Ms. Renfro requesting a written statement from her local "religious leader" confirming that she should not receive the vaccine due to her religion's sincerely held religious beliefs.

32.     At 10:09 A.M. on October 4, 2021, Ms. Renfro replied to Luckfield's email explaining that she was an independent Christian and, as such, she does not have a religious leader from whom she seeks religious guidance from. She further explained that she rejects modern medicine and vaccinations because her religious beliefs forbid her from ingesting the unknown chemicals that may be harmful to her body. She further added that she views life and body as sacred, as they are creations of God, and that ingesting chemicals would be profaning the sacred vessels. She then cited the EEOC's published guidelines on the definition of religion to remind Luckfield that her religious beliefs were protected by law.

6

33.     At 10:21 A.M., on October 4, 2021, Kristopher Newbauer ("Mr. Newbauer"), the Chief Human Resources Officer/Head of Global People & Talent at Rotary, asked for a clarification of her religious beliefs and asked three follow up questions about whether she has ever received other vaccines, whether she has ever ingested any medications, and whether she has any piercings or tattoos.

34.     At 3:22 P.M., Ms. Renfro refused to answer Newbauer's follow-up questions, citing HIPAA concerns.

35.     At 3:41 P.M., Mr. Newbauer, who is not a licensed attorney, replied and claimed that HIPAA does not apply to employers and that Ms. Renfro was required to answer his questions.

36.     At 4:52 P.M., Ms. Renfro replied to the three questions in the negative in general terms but declined to go into specific details for privacy reasons.

37.     At 5:05 P.M., Mr. Newbauer replied and stated the following:

You have refused to answer the questions posed as part of the [sic.] your request for reasonable accommodation and our attempt to engage you in the interactive process.

Because you did not answer, we were unable to determine that the basis for your request is a sincerely held religious belief. In fact, you cited concerns about medical safety as a response.

Unfortunately, because we were unable to establish that your request is based on a sincerely held religious belief, your request for an accommodation is denied. That said, even if there were a legitimate religious exemption, there would be an undue hardship for Rotary.

He then demanded that Ms. Renfro provide proof of vaccination by October 8, 2021 at 5:00 P.M. or face instant termination at 5:01 P.M.[2]

---

[2] In this email. Mr. Newbauer unequivocally states that even if Rotary had been able to establish her religious beliefs as sincere and genuine, they would nevertheless be unable to furnish her with an exemption as it would be "an undue hardship for Rotary". This begs the question of why they

38.     At 6:21 P.M., Ms. Renfro replied and reiterated that she did reply to Mr. Newbauer's questions, in bold.

39.     At 6:30 P.M., Mr. Newbauer replied with the following:

I did see your responses, but your responses weren't answers [*sic.*] the posed questions to the extent that they helped us understand the basis for your request.

You have cited your religious principles and beliefs, but it is entirely unclear what exactly those principles and beliefs are and how you determine what is acceptable and what is unacceptable given those principles and beliefs.
If your religious principles and beliefs preclude vaccinations, how do you reconcile working for a humanitarian service organization that relies on vaccination to eradicate Polio?[3]

40.     On October 7, 2021 at 3:41 P.M., Mr. Newbauer emailed Ms. Renfro to inquire whether she intended to submit proof of vaccination.

41.     Ms. Renfro was forbidden from being vaccinated by her religious beliefs and as such, she could not furnish proof of vaccination.

42.     On October 8, 2021 at 12:15 P.M., Ms. Renfro emailed the following to Mr. Newbauer and Luckfield:

As you can imagine, this has been the hardest three days of my life. I have been in deep meditation and constant prayer about this. I have dedicated close to 15 years of my life to Rotary and felt that I was a part of the Rotary Family. I just received a promotion and the chance to gain new experiences and knowledge. I have met some wonderful and amazing people at Rotary, and many of whom I am blessed to call friend. For over thirty years I have strived to be steadfast on my path of righteousness, and I have never had my faith tested this way. I have a deep and sincere faith in God, and when it comes to my morals and ethics being questioned it has saddened me. I cannot in my sincere faith in God take this vaccine. I am very

---

even inquired into the sincerity of her beliefs if their intention all along was to refuse her exemption request. not to mention those of the Class.

[3] Mr. Newbauer committed a *per se* violation of Title VII. The EEOC guidelines specifically explain that an employee's profession or job and the tasks or projects they undertake have no bearing on the sincerity of their religious beliefs. The EEOC took economic realities and employer-employee power dynamics into account in coming to this recommendation. It would be simply unrealistic as well as unfair to require employees to risk termination and the attendant economic hardships for their religious beliefs to be considered genuine.

much aware and cognizant of Covid 19's impact as it has affected my family, friends, and as we all know the whole entire world. I have and I will continue to take all measures to ensure the safety of myself and those around me. For clarity, the holistic measures and medicines that I take are in line with my sincerely held religious beliefs, and I would never harm ANYONE. I reiterate, the vaccine and the compounds it contains are not in line with my religious beliefs. In honoring God that my body is sacred, I cannot allow those compounds into my body. With that, I leave you with a few passages that I hold dear to me.

Romans 12:1 King James Version
12 I beseech you therefore, brethren, by the mercies of God, that ye present your bodies a living sacrifice, holy, acceptable unto God, which is your reasonable service.

Jeremiah 33:6 King James Version
6 Behold, I will bring it health and cure, and I will cure them, and will reveal unto them the abundance of peace and truth.

Mark 5:34 King James Version
34 And he said unto her, Daughter, thy faith hath made thee whole; go in peace, and be whole of thy plague.

Matthew 9:35 King James Version
35 And Jesus went about all the cities and villages, teaching in their synagogues, and preaching the gospel of the kingdom, and healing every sickness and every disease among the people.

With that, I am not separating from Rotary. It is my understanding that I am being terminated because of my sincerely held religious beliefs.

43.     At 2:15 P.M., Ms. Renfro sent another email clarifying, once again, that it was the chemicals present in the vaccines she could not ingest into her body according to the tenets of her religion.

44.     At 5:01 P.M. on October 8, 2021, Mr. Newbauer officially terminated Ms. Renfro's employment with Rotary International for refusing to be vaccinated.

45.     At the time this interactive process was being conducted, there existed EEOC guidelines that informed employers of the proper procedures and standards to use in order to avoid running afoul of Title VII. *See EEOC-NVTA-2008-2*:

a. The definition of "religion" is not restricted to organized or traditional religions such as Christianity, Judaism, or Islam.

b. An employee's beliefs or practice can still be considered "religion" under Title VII even if no other person on Earth adheres to them.

c. Religious beliefs include theistic beliefs as well as non-theistic "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views".

d. Social, political, or economic philosophies as well as mere personal preferences are not religious beliefs protected by Title VII.

## CLASS ALLEGATIONS

46.     Plaintiff brings this class action under Federal Rules of Civil Procedure 23(a) and (b).

47.     In this action, Plaintiff seeks to represent a Class defined as follows:

All natural persons who requested religious exemptions from Rotary International's vaccine mandate and were unlawfully denied, and who thereby, suffered an adverse employment action, ranging from termination to restriction of duties and/or job opportunities, and, in the latter case, were forced to take the vaccine against their will.

48.     Plaintiff does not know the exact size of the Class since such information is in the exclusive control of the Defendant. However, Plaintiff does believe, in good faith, that there are numerous such individuals and the precise number and identity of the Class members will be ascertainable from Rotary's records during discovery.

49.     The Class is so numerous that joinder of all members is impractical and inefficient and major gains in judicial efficiency and uniformity of adjudication can be had through maintaining this action as a class action.

50.     The questions of law and fact are common to the Class and predominate over questions pertaining to individual Class members and a class action will answer these common questions in a uniform manner. Some of the predominating common questions are:

a. What standards and procedures did Rotary use to determine the sincerity of requestees' religious beliefs?

b. Did these standards and procedures comply with state and federal law, including Title VII and EEOC guidelines?

c. On what basis did Rotary conclude that granting exemptions to its employee vaccine mandate would present an "undue hardship"?

d. Was this an acceptable and valid conclusion under Title VII and the EEOC guidelines?

e. Did Rotary treat the interactive process as a mere formality rather than as a process to develop individualized accommodations?

f. Which employees, if any, were granted exemptions? On what basis?

g. Were the religious exemptions being sought "reasonable" given the circumstances? And did Rotary violate state and federal law and the Class members' rights under the same by denying their exemption requests?

51. Plaintiff's claims are typical of the claims of the Class because they arose out of nearly identical circumstances, due to nearly identical conduct by Defendant, and resulted in nearly identical damages. The Plaintiff, like the Class members she seeks to represent, requested an exemption to Rotary's vaccine mandate and Rotary unlawfully denied the request. As a result, Plaintiff and the Class were subject to the same unlawful discrimination based on religion and suffered the same damages – adverse employment action from Rotary and being forced to take a vaccination against their will to keep their job.

52. She has no interests adverse to those of the Class and she herself will serve as an adequate Plaintiff in zealously prosecuting this action.

53. The Plaintiff has also retained competent counsel for herself and the Class with extensive experience in civil rights litigation, complex litigation – including class actions, and a proven history of success.

**COUNT I**
**VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e,** *et seq.*

54.     The Plaintiff, Kemberly Renfro, realleges and repleads the allegations in Paragraphs 1 – 53 of this Complaint.

55.     Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of their sincerely held religious beliefs. 42 U.S.C. § 2000e-2(a).

56.     The Defendant, Rotary International, is an employer under 42 U.S.C. § 2000 and was thereby forbidden from engaging in religious discrimination.

57.     Ms. Renfro, as an independent Christian, rigorously studies the bible and lives by a strict set of rules and beliefs that she sincerely believes in and adheres to. One of these sincerely held beliefs is the rejection of modern medicine in favor of holistic and traditional medical remedies. This latter belief forbids Ms. Renfro from receiving any vaccinations, including the COVID-19 vaccine.

58.     Ms. Renfro followed Rotary's procedures in requesting an exemption to its employee vaccine mandate.

59.     Rotary engaged in an inadequate interactive process with Ms. Renfro that asked improper questions founded on improper standards that violated guidelines published by the EEOC.

60.     Rotary treated the interactive process as a mere formality and indicated it would deny exemptions regardless of the sincerity of religious beliefs, because such exemptions would cause an "undue hardship" to Rotary without explaining why this would be the case.

61.     Rotary then categorized Ms. Renfro's sincerely held religious beliefs as mere "personal preference" due in part to the unorganized nature of her religion, and Rotary's agent Mr.

Newbauer refused to accept or believe that her refusal to ingest chemicals were sincere or based on her religion, despite Ms. Renfro providing multiple Bible passages to support her beliefs.

62.     Rotary then refused Ms. Renfro an exemption to its employee vaccine mandate and terminated her when she refused to be vaccinated.

63.     By treating the interactive process as a mere formality, Rotary made a mockery of Title VII and revealed a deep contempt for the fundamental rights that the United States Constitution and the Civil Rights Acts were entrusted with protecting.

64.     By categorizing Ms. Renfro's sincerely held religious beliefs as mere personal preference and refusing her request for a religious exemption, Rotary International intentionally or recklessly violated Title VII by engaging in unlawful religious discrimination.

65.     As a direct and proximate result of Rotary's unlawful discriminatory conduct, Ms. Renfro suffered numerous damages stemming from the loss of employment.

66.     Numerous other employees, the Class, also experienced nearly identical scenarios when they requested religious exemptions from Rotary, were refused exemptions, and suffered adverse employment action at the hands of Rotary. The Class suffered numerous damages stemming from these actions.

67.     Plaintiff Kemberly Renfro has already filed a charge with the EEOC against Rotary International. She received an official right-to-sue letter on August 16, 2022 which is attached hereto as Exhibit A.

### COUNT II
### VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
### 775 ILCS 5, et seq.

68.     The Plaintiff, Kemberly Renfro, realleges and repleads the allegations in Paragraphs 1 – 67 of this Complaint.

13

69.     775 ILCS 5/2-102(E-5) makes it unlawful for: "any employer to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement, or transfer, any terms or conditions that would require such person to violate or forgo a sincerely held practice of his or her religion".

70.     The Plaintiff, Kemberly Renfro, was an "employee" under 775 ILCS 5/2-101(A).

71.     The Defendant, Rotary International, is an "employer" under 775 ILCS 5/2-101(B).

72.     Ms. Renfro is an independent Christian that rigorously studies the bible and lives by a strict set of rules and beliefs that she sincerely believes in. One of these sincerely held beliefs is the rejection of modern medicine in favor of holistic, traditional medical remedies. This latter belief forbids Ms. Renfro from receiving any vaccinations, including the COVID-19 vaccine.

73.     Rotary imposed vaccination against COVID-19 as a mandatory condition for continued employment with the organization.

74.     By refusing to grant Ms. Renfro's request for a religious exemption to its vaccine mandate, Rotary required Ms. Renfro to violate her sincerely held religious beliefs if she wanted to maintain her employment with Rotary. This renders the enforcement of this vaccine mandate against her an unlawful violation of Ms. Renfro's civil rights under 775 ILCS 5/2-102(E-5).

75.     775 ILCS 5/10-102 authorizes aggrieved parties to commence a civil action for any alleged civil rights violations under this Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kemberly Renfro respectfully prays for the following relief from this Honorable Court:

14

A.      Certify this action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b), appoint Kemberly Renfro as Class Representative, and the undersigned counsel as Class Counsel.

B.      Award Plaintiff Kemberly Renfro and other Class members compensatory damages in an amount to be proven at trial for damages they suffered as a result of Rotary International's discriminatory conduct.

C.      Impose punitive damages on Rotary International for their intentional or reckless practices of religious discrimination and their gall in making a mockery of Title VII's interactive process.

D.      Award Plaintiff Kemberly Renfro costs, expenses, and reasonable attorney's fees incurred in prosecuting this action as provided for by the fee-shifting provisions under Title VII and the Illinois Human Rights Act.

E.      Any further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff Kemberly Renfro hereby demands trial by jury on all issues so triable.

Dated: November 4, 2022

Respectfully submitted,

s/ Kemberly Renfro

By:

FUKSA KHORSHID, LLC

s/ William E. Meyer, Jr.
*Attorney for Plaintiff and the Putative Class*

FUKSA KHORSHID, LLC
William E. Meyer, Jr. (ARDC No. 6207345)
Lema A. Khorshid (ARDC No. 6283237)
Alex Lee (ARDC No. 6339909)
200 W. Superior, Suite 410
Chicago, IL 60654
T: 312.266.2221
F: 312.266.2224
william@fklawfirm.com
lema@fklawfirm.com
alex@fklawfirm.com

16

# Exhibit A

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

### DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Kemberly Renfro
c/o Lucas Fuksa
Fuksa Khorshid LLC
200 West Superior Street
CHICAGO, IL 60654

Charge No: 440-2022-00119

EEOC Representative and email:     Alison Fisher
                                   Investigator
                                   Alison.Fisher@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2022-00119.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
8/16/2022
Julianne Bowman
District Director

**Cc:** ROTARY INTERNATIONAL

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2022-00119 to the District Director at Julianne Bowman, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

# **Exhibit B**

Case: 1:22-cv-06132 Document #: 1-1 Filed: 11/04/22 Page 22 of 29 PageID #:22



**FW: Religious Erexemption**

krenfro19@yahoo.../Rotary

**Kemberly Renfro** <kemberly.renfro@rotary.org>
To: krenfro19@yahoo.com <krenfro19@yahoo.com>, krenfro39@gmail.com <krenfro39@gmail.com>

Oct 8, 2021 at 3:33 PM

---

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Friday, 08 October, 2021 3:31 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>; Aja Castillo <Aja.Castillo@rotary.org>
**Subject:** Re: Religious Exemption

Thanks, Kem. I appreciate the addition information.

Again, please know that our inability to approve your request for accommodation has nothing to do with you as a person or with your contributions to Rotary over the past 15 years. You're an incredible person. I've always admired and respected you. And I support your personal decision, especially knowing how difficult it was for you to make.

Unfortunately, we've reached an impasse. Because your request for an accommodation has been denied as a result of our inability to establish that your religious belief is sincerely held—and if we were able to do so, it would create an undue hardship on Rotary—your employment with Rotary will end at 5:01 pm today, 8 October 2021.

I wish you nothing but the very best in your professional and personal life.

Best,

Kris

---

**From:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Date:** Friday, October 8, 2021 at 2:15 PM
**To:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** RE: Religious Exemption

Hi Kris,

Thank you for the very kind words. It is the chemical composition of all vaccines. I believe, as it states in the King James Version Bible;

*Jeremiah 33:6*
*King James Version*
*6 Behold, I will bring it health and cure, and I will cure them, and will reveal unto them the abundance of peace and truth.*

*Mark 5:34*
*King James Version*
*34 And he said unto her, Daughter, thy faith hath made thee whole; go in peace, and be whole of thy plague.*

*Matthew 9:35*
*King James Version*
*35 And Jesus went about all the cities and villages, teaching in their synagogues, and preaching the gospel of the kingdom, and healing every sickness and every disease among the people.*

I believe this means that God knows of all plagues, and as long as I take care of my health and have faith in him, that he will heal every sickness and every disease.

Yours in Rotary,

Kemberly Renfro
AR Contribution Processing Supervisor | Finance
Tel 1.847.866.4700
rotary.org



Like us: facebook.com/rotary
Follow us: twitter.com/rotary
Watch us: youtube.com/user/RotaryInternational

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Friday, 08 October, 2021 12:28 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption

Hi Kemberly,

I can imagine that this has been very difficult, and I absolutely respect your decision, and I continue to think extremely highly of you. You're a truly wonderful person and colleague, and I'm thankful for the opportunity to with you.

Please know that no one is questioning or doubting your morals and ethics. That was never of concern. You are choosing to do what is right for you, and that is both admirable and respectable. And I'm sure you can imagine that it is my duty and obligation to do what is right for the health and safety of Rotary's employees, which includes enforcing the vaccine mandate policy.

As a point of clarity, you mentioned that "…the vaccine and the compounds it contains are not in line with my religious beliefs. In honoring God that my body is sacred, I cannot allow those compounds into my body." Can you be more explicit about the compounds the vaccine contains that are in conflict with your religious belief?

Thanks,

Kris

---

**From:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Date:** Friday, October 8, 2021 at 12:15 PM
**To:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** RE: Religious Exemption

Hi Kris,

As you can imagine, this has been the hardest three days of my life. I have been in deep meditation and constant prayer about this. I have dedicated close to 15 years of my life to Rotary and felt that I was a part of the Rotary Family. I just received a promotion and the chance to gain new experiences and knowledge. I have met some wonderful and amazing people at Rotary, and many of whom I am blessed to call friend. For over thirty years I have strived to be steadfast on my path of righteousness, and I have never had my faith tested this way. I have a deep and sincere faith in God, and when it comes to my morals and ethics being questioned it has saddened me. I cannot in my sincere faith in God take this vaccine. I am very much aware and cognizant of Covid 19's impact as it has affected my family, friends, and as we all know the whole entire world. I have and I will continue to take all measures to ensure the safety of myself and those around me. For clarity, the holistic measures and medicines that I take are in line with my sincerely held religious beliefs, and I would never harm ANYONE. I reiterate, the vaccine and the compounds it contains are not in line with my religious beliefs. In honoring God that my body is sacred, I cannot allow those compounds into my body.  With that, I leave you with a few passages that I hold dear to me.

Romans 12:1
King James Version
**12** I beseech you therefore, brethren, by the mercies of God, that ye present your bodies a living sacrifice, holy, acceptable unto God, which is your reasonable service.

Jeremiah 33:6
King James Version
**6** Behold, I will bring it health and cure, and I will cure them, and will reveal unto them the abundance of peace and truth.

Mark 5:34
King James Version
**34** And he said unto her, Daughter, thy faith hath made thee whole; go in peace, and be whole of thy plague.

Matthew 9:35
King James Version
**35** And Jesus went about all the cities and villages, teaching in their synagogues, and preaching the gospel of the kingdom, and healing every sickness and every disease among the people.

With that, I am not separating from Rotary. It is my understanding that I am being terminated because of my sincerely held religious beliefs.

Yours in Rotary,

Kemberly Renfro
AR Contribution Processing Supervisor | Finance
Tel 1.847.866.4700
rotary.org



Like us: facebook.com/rotary
Follow us: twitter.com/rotary
Watch us: youtube.com/user/RotaryInternational

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

---

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Thursday, 07 October, 2021 3:41 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption
**Importance:** High

Hi Kemberly,

Just checking in to see if you intend to submit evidence of having received one administration of a COVID-19 vaccination or if you intend to separate from Rotary tomorrow, Friday, 8 October 2021?

Please advise.

Thanks,

Kris

---

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Date:** Monday, October 4, 2021 at 6:30 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption

Hi Kemberly,

I did see your responses, but your responses weren't answers the posed questions to the extent that they helped us understand the basis for your request.

You have cited your religious principles and beliefs, but it is entirely unclear what exactly those principles and beliefs are and how you determine what is acceptable and what is unacceptable given those principles and beliefs.

If your religious principles and beliefs preclude vaccinations, how do you reconcile working for a humanitarian service organization that relies on vaccination to eradicate Polio?

Thanks,

Kris
.....................................
Kristopher J. Newbauer
CHRO/Head of Global People & Talent (formerly Human Resources)
Tel 1.847.866.3110
rotary.org

**Error! Filename not specified.**

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

---

**From:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Sent:** Monday, October 4, 2021 6:21 PM
**To:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** RE: Religious Exemption

Kris,

I did answer. Did you not see my answer in **bold** below? Please see the screen shot below.

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Monday, 04 October, 2021 10:21 AM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>; Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption

Hi Kemberly,

Thank you for your explanation. Are we correct in understanding that your objection to the vaccine is based upon the premise that your body is a temple of the Holy Spirit? - **Anything that I do to my body, ingest/consume are fully aligned with my sincerely held principles and beliefs.**

If so, can you demonstrate that:

1. You have objected to, rejected, and received exemptions for all other vaccinations (i.e., diphtheria, tetanus, polio, measles, etc.)? — **To date I have not agreed to any vaccinations. Any vaccinations that I have received as a child, were consented to by my parents.**
2. You have not and do not ingest any medications (in other words, that you have not used Rotary's pharmacy benefit)? — **I am not sure if I have used my Rotary pharmacy benefit for medicine, as I have been a Rotary employee since March 2007. However, I can say that if I were prescribed medication that was filled through the Rotary pharmacy benefit and ingested, I ensured that it aligned with my sincerely held religious principles and beliefs.**
3. You have no body piercings and/or tattoos. — **My personal choices for what I put into my body or do my body (piercings and/or tattoos), are aligned with my sincerely held religious principles and beliefs.**

---

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Monday, 04 October, 2021 5:05 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption

Hi Kemberly,

You have refused to answer the questions posed as part of the your request for reasonable accommodation and our attempt to engage you in the interactive process.

Because you did not answer, we were unable to determine that the basis for your request is a sincerely held religious belief. In fact, you cited concerns about medical safety as a response.

Unfortunately, because we were unable to establish that your request is based on a sincerely held religious belief, your request for an accommodation is denied. That said, even if there were a legitimate religious exemption, there would be an undue hardship for Rotary.

As such, you have until 5:00 pm CDT, Friday, 8 October 2021, to submit evidence that you have received at least one vaccination shot (and a month thereafter to prove evident of receiving the second shot).

Failure to comply will result in your termination in Friday, 8 October 2021, as of 5:01 pm.

Please let me know what questions you have.

Regards,

Kris

.....................................
Kristopher J. Newbauer
CHRO/Head of Global People & Talent (formerly Human Resources)
Tel 1.847.866.3110
rotary.org

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

---

**From:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Sent:** Monday, October 4, 2021 4:52 PM
**To:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Cc:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** FW: Religious Exemption

Hello Kris,

Anything that I do to my body, ingest/consume are fully aligned with my sincerely held religious principles and beliefs. See my responses below.

Yours in Rotary,

Kemberly Renfro

AR Contribution Processing Supervisor | Finance
Tel 1.847.866.4700
rotary.org



Like us: facebook.com/rotary
Follow us: twitter.com/rotary
Watch us: youtube.com/user/RotaryInternational

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

---

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Monday, 04 October, 2021 3:41 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>; Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption

Kemberly,

I draw your attention to the U.S. Department of Health and Human Services (HHS) bulletin issued on 30 September 2021, which explicitly states," The guidance reminds the public that the HIPAA Privacy Rule does not apply to employers or employment records."

You can read the guidance here:  https://www.hhs.gov/about/news/2021/09/30/ocr-issues-guidance-on-hipaa-covid-19-vaccinations-workplace.html

Also, I encourage you to review #4 of HHS' FAQs, which states, "The Privacy Rule does not apply to employment records, including employment records held by covered entities and business associates20 acting in their capacity as employers. Thus, the Privacy Rule generally does not regulate what information can be requested from employees as part of the terms and conditions of employment that a covered entity or business associate may impose on its workforce." You can read more here: https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-covid-19-vaccination-workplace/index.html

As such, we need you to answer the posed questions.

Thanks,

Kris

---

**From:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Date:** Monday, October 4, 2021 at 3:22 PM
**To:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>, Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** RE: Religious Exemption

Hi Kris,

For questions 1,2, and 3, please see the HIPAA Privacy Rule.

Summary of the HIPAA Privacy Rule | HHS.gov

As I've stated previously,

***Overview:  Religion is very broadly defined for purposes of Title VII.  The presence of a deity or deities is not necessary for a religion to receive protection under Title VII.  Religious beliefs can include unique beliefs held by a few or even one individual; however, mere personal preferences are not religious beliefs.  Individuals who do not practice any religion are also protected from discrimination on the basis of religion or lack thereof.  Title VII requires employers to accommodate religious beliefs, practices and observances if the beliefs are "sincerely held" and the reasonable accommodation poses no undue hardship on the employer.***

***1. Religion***

*Title VII defines "religion" to include "all aspects of religious observance and practice as well as belief," not just practices that are mandated or prohibited by a tenet of the individual's faith.[18]  Religion includes not only traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, Sikhism, and Buddhism, but also religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small number of people, or that seem illogical or unreasonable to others.[19]  Further, a person's religious beliefs "need not be confined in either source or content to traditional or parochial concepts of religion."[20]  A belief is "religious" for Title VII purposes if it is "religious" in the person's "own scheme of things," i.e., it is a "sincere and meaningful" belief that "occupies a place in the life of its possessor parallel to that filled by . . . God."[21]  The Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."[22]  An employee's belief, observance, or practice can be "religious" under Title VII even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief, observance, or practice, or if few – or no – other people adhere to it.[23]*

*Religious beliefs include theistic beliefs as well as non-theistic "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."[24]  Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious,[25] beliefs are not protected merely because they are strongly held.  Rather, religion typically concerns "ultimate ideas" about "life, purpose, and death."[26]*

*Courts have looked for certain features to determine if an individual's beliefs can be considered religious.  As one court explained: "'First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as*

*opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs."[27]*

*Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII.[28] However, overlap between a religious and political view does not place it outside the scope of Title VII's religion protections, as long as that view is part of a comprehensive religious belief system and is not simply an "isolated teaching."[29] Religious observances or practices include, for example, attending worship services, praying, wearing religious garb or symbols, displaying religious objects, adhering to certain dietary rules, proselytizing or other forms of religious expression, and refraining from certain activities. Determining whether a practice is religious turns not on the nature of the activity, but on the employee's motivation. The same practice might be engaged in by one person for religious reasons and by another person for purely secular reasons.[30] Whether the practice is religious is therefore a situational, case-by-case inquiry, focusing not on what the activity is but on whether the employee's participation in the activity is pursuant to a religious belief.[31] For example, one employee might observe certain dietary restrictions for religious reasons while another employee adheres to the very same dietary restrictions but for secular (e.g., health or environmental) reasons.[32] In that instance, the same practice in one case might be subject to reasonable accommodation under Title VII because an employee engages in the practice for religious reasons, and in another case might not be subject to reasonable accommodation because the practice is engaged in for secular reasons.[33] However, EEOC and courts must exercise a "light touch" in making this determination.[34]*

Yours in Rotary,

Kemberly Renfro
AR Contribution Processing Supervisor | Finance
Tel 1.847.866.4700
rotary.org



Like us: facebook.com/rotary
Follow us: twitter.com/rotary
Watch us: youtube.com/user/RotaryInternational

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

---

**From:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Sent:** Monday, 04 October 2021 10:21 AM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>; Robert Luckfield <Robert.Luckfield@rotary.org>
**Subject:** Re: Religious Exemption

Hi Kemberly,

Thank you for your explanation. Are we correct in understanding that your objection to the vaccine is based upon the premise that your body is a temple of the Holy Spirit? -**Anything that I do to my body, ingest/consume are fully aligned with my sincerely held principles and beliefs.**

If so, can you demonstrate that:

1. You have objected to, rejected, and received exemptions for all other vaccinations (i.e., diphtheria, tetanus, polio, measles, etc.)? — **To date I have not agreed to any vaccinations. Any vaccinations that I have received as a child, were consented to by my parents.**
2. You have not and do not ingest any medications (in other words, that you have not used Rotary's pharmacy benefit)? — **I am not sure if I have used my Rotary pharmacy benefit for medicine, as I have been a Rotary employee since March 2007. However, I can say that if I were prescribed medication that was filled through the Rotary pharmacy benefit and ingested, I ensured that it aligned with my sincerely held religious principles and beliefs.**
3. You have no body piercings and/or tattoos. — **My personal choices for what I put into my body or do to my body (piercings and/or tattoos), are aligned with my sincerely held religious principles and beliefs.**

We appreciate your assistance as we work with legal counsel to balance our employees' rights to (and Rotary's obligation to provide) a safe and health workplace with constitutional rights to freedom of religion.

Because the deadline for vaccination is today, we will need your prompt response today.

Thanks,

Kris

---

**From:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Date:** Monday, October 4, 2021 at 10:09 AM
**To:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Cc:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Subject:** RE: Religious Exemption

Hello Robert,

I am very religious and spiritual and align with the bible related to living a healthy wholesome life, however, I do not have a religious leader whom I seek religious guidance from. In lieu of traditional medicine, I practice holistic medical remedies and treatments and a healthy eating lifestyle to avoid ingesting any foods or chemicals that are not in keeping aligned with my SINCERELY HELD RELIGIOUS PRINCIPLES and BELIEFS. I am terrified of the potential damage this vaccine and

others may cause to my body's health and existence and the health and existence of my children (future and present). Per the Vaccine Adverse Events Reporting System ("VAERS"), as of August 27, 2021, 650,077 post-vaccination adverse events have been reported (https://childrenshealthdefense.org/defender/vaers-cdc-injuries-reported-covid-vaccines-fda-boosters and https://vaers.hhs.gov/). A conflict arises because my religious convictions are predicated on the belief that all life is sacred and the ingestion, injections or other vaccination methods are against my deep, sincerely held religious beliefs.

Per EEOC's Section 12: Religious Discrimination dated January 15, 2021, religion is defined as:

*Overview: Religion is very broadly defined for purposes of Title VII. The presence of a deity or deities is not necessary for a religion to receive protection under Title VII. Religious beliefs can include unique beliefs held by a few or even one individual; however, mere personal preferences are not religious beliefs. Individuals who do not practice any religion are also protected from discrimination on the basis of religion or lack thereof. Title VII requires employers to accommodate religious beliefs, practices and observances if the beliefs are "sincerely held" and the reasonable accommodation poses no undue hardship on the employer.*

*1. Religion*

*Title VII defines "religion" to include "all aspects of religious observance and practice as well as belief," not just practices that are mandated or prohibited by a tenet of the individual's faith.[18] Religion includes not only traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, Sikhism, and Buddhism, but also religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small number of people, or that seem illogical or unreasonable to others.[19] Further, a person's religious beliefs "need not be confined in either source or content to traditional or parochial concepts of religion."[20] A belief is "religious" for Title VII purposes if it is "religious" in the person's "own scheme of things," i.e., it is a "sincere and meaningful" belief that "occupies a place in the life of its possessor parallel to that filled by . . . God."[21] The Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."[22] An employee's belief, observance, or practice can be "religious" under Title VII even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief, observance, or practice, or if few – or no – other people adhere to it.[23] .*

*Religious beliefs include theistic beliefs as well as non-theistic "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."[24] Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious,[25] beliefs are not protected merely because they are strongly held. Rather, religion typically concerns "ultimate ideas" about "life, purpose, and death."[26]*

*Courts have looked for certain features to determine if an individual's beliefs can be considered religious. As one court explained: "'First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.'"[27]*

*Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII.[28] However, overlap between a religious and political view does not place it outside the scope of Title VII's religion protections, as long as that view is part of a comprehensive religious belief system and is not simply an "isolated teaching."[29] Religious observances or practices include, for example, attending worship services, praying, wearing religious garb or symbols, displaying religious objects, adhering to certain dietary rules, proselytizing or other forms of religious expression, and refraining from certain activities. Determining whether a practice is religious turns not on the nature of the activity, but on the employee's motivation. The same practice might be engaged in by one person for religious reasons and by another person for purely secular reasons.[30] Whether the practice is religious is therefore a situational, case-by-case inquiry, focusing not on what the activity is but on whether the employee's participation in the activity is pursuant to a religious belief.[31] For example, one employee might observe certain dietary restrictions for religious reasons while another employee adheres to the very same dietary restrictions but for secular (e.g., health or environmental) reasons.[32] In that instance, the same practice in one case might be subject to reasonable accommodation under Title VII because an employee engages in the practice for religious reasons, and in another case might not be subject to reasonable accommodation because the practice is engaged in for secular reasons.[33] However, EEOC and courts must exercise a "light touch" in making this determination.[34]*

Based on the definition of religion above, I hold GENUINE and SINCERE personal religious beliefs which are aligned with Title VII of the Civil Rights Act of 1964 outlined in this link https://www.eeoc.gov/statutes/title-vii-civil-rights-act-1964.

Aside from my requested religious exemption, I am very much willing to practice CDC guidelines to prevent spreading or contracting COVID-19, such as social distancing and wearing a mask.

I am also attaching my previously submitted vaccine exemption statement.

Yours in Rotary,

Kemberly Renfro
AR Contribution Processing Supervisor | Finance
Tel 1.847.866.4700
rotary.org



Like us: facebook.com/rotary
Follow us: twitter.com/rotary
Watch us: youtube.com/user/RotaryInternational

ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA

---

**From:** Robert Luckfield <Robert.Luckfield@rotary.org>
**Sent:** Monday, 27 September, 2021 2:39 PM
**To:** Kemberly Renfro <Kemberly.Renfro@rotary.org>
**Cc:** Kristopher Newbauer <Kristopher.Newbauer@rotary.org>
**Subject:** Religious Exemption

Hello,

Thank you for submitting a request for a religious exemption for Rotary's mandatory COVID-19 mandate.

The purpose of the mandate is to try to protect the health and safety of all of our employees, so we are taking all exemption requests—religious and medical—seriously. In doing so, we are working with both internal and external legal counsel to evaluate the merits of each individual request. As such, we are hereby requesting a written statement from your local religious leader confirming that you should not receive the vaccine due to your sincerely held religious beliefs.

As the deadline for the COVID vaccine for our employees is coming close (4 October 2021), we are requiring that you submit the written statement by 5:00 pm CDT, Monday, 4 October 2021.

If you have any questions please let me know.

Robert J. Luckfield III, CBP
Manager of Global Employee Health & Wellness, People & Talent
847-866-3112
rotary.org



ROTARY INTERNATIONAL | One Rotary Center | 1560 Sherman Ave. | Evanston, IL 60201 USA