IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIMBERLY RENFRO,

                Plaintiff,

      v.

ROTARY INTERNATIONAL,

                Defendants.

Case No. 22 C 6132

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Kemberly Renfro brought action against Defendant Rotary International for two counts: Count I for violation of Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e, *et seq.,* and Count II for violation of the Illinois Human Rights Act, 775 ILCS 5, *et seq.* [Dkt. No. 1.] Defendant Rotary International moves for dismissal of Count II of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and/or pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. [Dkt. No. 18.] For the reasons stated herein, the Court grants the Motion for lack of subject matter jurisdiction. Count II is dismissed without prejudice.

## I. <u>BACKGROUND</u>

In her Complaint, Plaintiff Renfro alleges the following facts.

### A. Parties

Rotary International ("Rotary") is a large non-profit organization based out of Evanston, Illinois. (Pl. First Am. Compl. (hereinafter "Compl.") ¶ 11, Dkt. No. 14). Rotary promotes a variety of health, educational, and environmental programs and initiatives and is primarily known for its international vaccination programs and efforts to eradicate polio. (*Id.* ¶¶ 11—12.)

Ms. Kemberly Renfro ("Renfro") is a 49-year-old woman residing in Evanston, Illinois. (*Id.* ¶ 23.) Identifying as an independent Christian, Renfro holds strong religious views but does not belong to any particular church, sect, denomination, or other Christian organization, nor does she follow a pastor or other comparable religious leader. (*Id.* ¶ 24.) Renfro rejects modern medicine in favor of holistic, traditional medical remedies due to the former's use of chemicals that she sincerely believes are harmful to her. (*Id.* ¶ 25.) She attributes this rejection to her religious beliefs. (*Id.* ¶ ¶ 39, 47, 62.)

### B. Rotary's COVID-19 Response

In response to the outbreak of COVID-19, Rotary adopted the policy that any employee who was denied a religious or medical exemption and subsequently refused COVID-19 vaccination would be

terminated. (*Id.* ¶¶ 14, 19.) The policy dictated that employees granted exemptions be restricted to virtual participation in meetings and be required to work from an *ad hoc* work area designed to separate them from vaccinated employees. (*Id.*)

### C. Renfro's Religious Exemption Request and Termination

In March 2020, Renfro transitioned to remote work as ordered by Rotary. (*Id.* ¶ 27.) Renfro "followed Rotary's procedures in requesting an exemption to its employee vaccine mandate." (*Id.* ¶ 48.) On or about August 7, 2021, Renfro submitted a religious exemption request to comply with Rotary's staff vaccine mandate and return-to-office plan. (*Id.* ¶ 28.) At 2:39 P.M. on September 27, 2021, Renfro received an email from Rotary's Manager of Global Employee Health & Wellness, Robert J. Luckfield III ("Luckfield"), requesting a written statement from her local "religious leader" confirming that she should not receive the vaccine due to her religion's sincerely held religious beliefs. (*Id.* ¶ 29.)

At 10:09 a.m. on October 4, 2021, Renfro responded to Luckfield's email explaining that she does not have a local religious leader due to her status as an independent Christian. (*Id.* ¶ 30.) In this email, she also explained that she rejects modern medicine and vaccinations because her religious beliefs forbid her from ingesting the unknown chemicals that may be harmful to her body and that because she views life and body as sacred creations of God,

ingesting chemicals would be profaning the sacred vessels. (*Id.)*  As a reminder to Luckfield that her religious beliefs were protected by law, she also cited the EEOC's published guidelines on the definition of religion. (*Id.)*

On the morning of October 4, 2021, the Chief Human Resources Officer/Head of Global People & Talent at Rotary, Kristopher Newbauer ("Newbauer"), requested via email clarification of her religious beliefs with three follow-up questions:  (1) whether she has ever received other vaccines; (2) whether she has ever ingested any medications; (3) and whether she has any piercings or tattoos. (*Id.* ¶ 31.)  In an emailed response that afternoon, Renfro declined to answer Newbauer's follow-up questions, citing "HIPAA concerns." (*Id.* ¶ 32.)  Newbauer responded within twenty minutes claiming that she was required to answer his questions because HIPAA does not apply to employers. (*Id.* ¶ 33.)  At 4:52 p.m., Renfro answered all questions in the negative in general terms and again but refused to provide additional details, citing privacy concerns. (*Id.* ¶ 34.)

The evening of October 4, at 5:05 p.m., Newbauer rejected Renfro's religious exemption request, claiming that Rotary was unable to determine that her request was based on a sincerely held religious belief because she failed to answer adequately his follow-up questions. (*Id.* ¶ 35.)  He added, "even if there were a legitimate religious exemption, there would be an undue hardship for Rotary."

(First Compl. Ex. B (hereinafter "Ex. B"); Dkt. No. 1 at 25; *see id.*)  He also instructed Renfro to provide proof of vaccination by 5:00 p.m. October 8, 2021, to avoid instant termination at 5:01 p.m. (Ex. B.)  Later that evening, Renfro replied, reiterating that she did respond to Newbauer's questions. (Compl. ¶ 36.)  Afterwards, still on October 4, Newbauer replied that her answers, which he had seen, were not specific enough to explain the basis of her request. (*Id.* ¶ 37.)  He also questioned how she was able to reconcile her religious beliefs surrounding vaccinations with her employment at an organization focused on using vaccinations to eradicate polio. (*Id.; Ex. B.)

On October 7, 2021, at 3:41 p.m., Newbauer emailed Renfro asking whether she intended to submit proof of vaccination. (Compl. ¶ 38.)  On October 8, 2021, at 12:15 p.m., Renfro emailed Newbauer and Luckfield to express her distress over the situation and to reiterate her religious reasons against vaccination and willingness to take other precautions as necessary. (*Id.* ¶ 40.)  She concluded the email with four Bible verses and a statement that she was not separating from Rotary voluntarily but understood she was being terminated for "sincerely held religious beliefs." (*Id.; Ex. B.)  At 2:15 p.m., Renfro sent another email in which she repeated her religious opposition to the chemicals present in the vaccine and repeated three of the four Bible verses from her last email. (Compl. ¶ 41.)  At

- 5 -

5:01 p.m. on October 8, 2021, Rotary terminated Renfro's employment. (*Id.* ¶ 42.)

### D.  Complaints

Renfro filed a charge with the EEOC and subsequently received a right-to-sue letter on August 16, 2022. (*Id.* ¶ 57; *see* Compl. Ex. A; Dkt. No. 14.)  Renfro then filed this lawsuit, in which she brings two counts of employment discrimination on the basis of religion against Rotary: Count I under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (Compl. ¶¶ 44–57); and Count II for violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5, *et seq* (*Id.* ¶¶ 58–65).

## II.  <u>LEGAL STANDARD</u>

### A.  **Fed. R. Civ. P. 12(b)(1)**

A federal court's original jurisdiction may be supplemented to include state law claims that "form part of the same case or controversy." 28 U.S.C. § 1367(a); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014); *see* U.S. Const. Art. III. The federal court may only exercise supplemental jurisdiction over a state claim if it is within the limits provided for subject matter jurisdiction under state law. *Hernandez v. Cook Cnty. Sheriff's Off.*, 76 F.Supp. 3d 739, 742 (N.D. Ill. 2014) (Durkin, J.); *see McCoy,* 760 F.3d at 683.  "The party asserting federal jurisdiction bears the burden of demonstrating its existence." *Farnik v. F.D.I.C.,* 707 F.3d

717, 721 (7th Cir. 2013). Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss any claim over which the Court lacks subject matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3).

### B. Fed. R. Civ. P. 12(c)

The court evaluates a Rule 12(c) motion for judgment on the pleadings under "the same standard as a Rule 12(b)(6) motion." *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 757 n. 1 (7th Cir. 2006). Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570). A complaint that alleges facts to supply an impenetrable defense to what would otherwise be a good claim should be dismissed (on proper motion) under Rule 12(c). *Brownmark Films LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012). In other words, a plaintiff whose allegations show that there is an airtight defense "has pleaded himself out of court." *Id.*; *Richards v. Mitcheff,* 696 F.3d 635, 638 (7th Cir. 2012).

### III. DISCUSSION

Defendant seeks dismissal of Count II pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(c). For dismissal under Rule 12(b)(1), Defendant argues that the Court lacks subject matter jurisdiction over Renfro's Count II IHRA claim as Renfro has failed

- 7 -

to comply with the administrative requirements under the IHRA. Alternatively, Defendant seeks dismissal on such exhaustion grounds through Rule 12(c).

In Count II, Renfro claims Rotary violated the IHRA. For a court to adjudicate an IHRA claim, a plaintiff must exhaust administrative remedies. 775 ILCS 5/7A-102; § 8-111(D); *see, e.g., Mein v. Masonite Corp.,* 485 N.E.2d 312, 315 ((Ill. 1985); *Flaherty v. Gas Rsch. Inst.,* 31 F.3d 451, 458 (7th Cir. 1994). The procedure for redressing acts of employment discrimination is found in Articles 7 and 8 of the IHRA. *Castaneda v. Illinois Hum. Rts. Comm'n,* 547 N.E.2d 437, 439 (Ill. 1989); *see* §§ 7A-101 *et seq.*, 8-101 *et seq.* For Renfro to have exhausted all administrative remedies, a final administrative order must have been rendered by the Illinois Department of Human Rights ("IDHR" or "the Department"). *Id.; Cebertowicz v. Baldwin,* 86 N.E.3d 374 (Ill. App. Ct. 2017).

Under Article 7A, a party who believes their civil rights have been violated must file a charge with the IDHR within 300 days of the alleged violation. *Id.* § 7A-102(A)(1). This step can be satisfied by filing the charge with the EEOC within 300 calendar days of the alleged incident. § 7A-102(A-1)(1). If appropriately filed with the EEOC as "the governmental agency designated to investigate the charge first," the IDHR, "shall notify the parties that a charge has been received by the EEOC and sent to the Department for dual filing

purposes" and instruct the complainant to subsequently "submit a copy of the EEOC's determination [to the IDHR] within 30 days after service of the determination by the EEOC on the complainant." § 7A-102(A-1)(1).

After receipt of the EEOC determination from the complainant, "the IDHR will either adopt the EEOC's determination or initiate its own investigation," *Donald v. City of Chicago,* 539 F.Supp. 3d 912, 920 (N. D. Ill. 2021) (citing § 7A-102(A-1). Ultimately, if the IDHR dismisses the charges, it will notify the complainant of her right to commence a civil action within 90 days. § 7A-102(D)(3); § 7A-102(A-1)(3)(a). This notice constitutes a final administrative order from the IDHR that serves as an exhaustion of administrative remedies. *Cebertowicz v. Baldwin,* 86 N.E.3d 374 (Ill. App. Ct. 2017); *see also Vroman v. Round Lake Area Schools-District,* No. 15 C 2013, 2015 WL 7273108, at *2 (N.D. Ill. Nov. 18, 2015).

Although Renfro alleges that she filed a charge of discrimination with the EEOC, she does not allege that she received a final administrative order from the IDHR, that she received a notification from IDHR that her EEOC charge was cross-filed with the IDHR, or that she notified the IDHR of the EEOC determination. § 7A-102 (A-1)(1) and (3); § 7A-102 (D)(3) and (4). She also does not allege that she obtained any notification from IDHR as to her right to commence a civil action. *Cebertowicz,* 86 N.E.3d 374. In her

- 9 -

response, Renfro concedes that she has not received this notification and thus seeks discovery.

### A. Subject Matter Jurisdiction

Rotary posits that although a failure to exhaust administrative remedies is an affirmative defense under the federal statute, Title VII, the Illinois sister-statute, IHRA, treats it as a jurisdictional issue. Thus, Rotary argues, this Court should consider it a jurisdictional requirement, and because Renfro failed to plead that she exhausted administrative remedies on her state claim, the Court should dismiss her claim.

First, this Court considers whether a plaintiff's failure to comply strictly with the statutory framework of the IHRA indeed creates a bar to subject matter jurisdiction. Divergence remains between how the Illinois Supreme Court has interpreted jurisdictional issues with respect to IHRA claims and the way the U.S. Supreme Court has opined on such issues regarding federal Title VII claims. *Compare, Sangamon Cnty. Sheriff's Dep't v. Illinois Hum. Rts. Comm'n,* 908 N.E.2d 39, 47 (Ill. 2009) (recognizing the requirement that a Charge of Discrimination be filed within 180 days [now 300 days] of the discriminatory event is mandatory to vest subject matter jurisdiction of the charge) *with Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional

prerequisite to suit in federal court, and reaching this conclusion upon consideration of "the structure of Title VII, the congressional policy underlying it, and the reasoning of [its] cases"); *Fort Bend Cnty.,Texas v. Davis,* 139 S.Ct. 1843, 1851 (2019) (holding that Title VII's 300-day charge-filing requirement is not a jurisdictional prescription delineating the adjudicatory authority of courts). Judge Lefkow looked to the Illinois courts' interpretation of the IDHR when she recognized the limits on federal courts' jurisdiction over IHRA claims in *Bell v. LaSalle Bank N.A.,* 2005 WL 43178, at *2 (N. D. Ill. Jan. 10, 2005) (Lefkow, J.)

This Court concurs. Illinois law on exhaustion applies where, as here, a federal court exercises jurisdiction over supplemental state law claims. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 (1938). When considering an alleged violation of state law (such as in Plaintiff's Count II claim), this Court must seek to interpret that state law as the Illinois Supreme Court would interpret it. *Allstate Ins. Co. v. Menards, Inc.,* 285 F.3d 630, 636 (7th Cir.2002). Indeed, the Ninth Circuit looked to the state courts to determine whether a state employment discrimination statute's jurisdictional prerequisite translated to subject matter jurisdiction. *See Clark v. AmTrust N. Am.,* 792 F. App'x 456, 459 (9th Cir. 2019) (*citing Kim v. Konad USA Distribution, Inc.,* 226 Cal.App.4th 1336, 1347, 172 Cal. Rptr. 3d 686, 693 (Cal. 2014)). There, the California courts said it

did not.  For the Illinois statute at issue, the Illinois Supreme
Court said it does. *See Castaneda v. Illinois Hum. Rts. Comm'n,* 132
Ill. 2d 304, 322—23 (1989); *see also* § 8-111.

Plaintiff has not yet carried her burden to establish this
jurisdiction. *See Farnik,* 707 F.3d 717, 721.  Her failure to allege
that the IDHR issued a final determination constituted a failure to
demonstrate that she exhausted administrative remedies. Without this
exhaustion, the count would remain unripe for this Court's subject
matter jurisdiction.  For this reason, the Court dismisses Count II,
without prejudice. Plaintiff has thirty (30) days to amend pursuant
to Federal Rules of Civil Procedure 15(a)(2) and 12(e).

### B. Affirmative Defense

A failure to exhaust administrative remedies is traditionally
considered an affirmative defense. *See Walker v. Thompson*, 288 F.3d
1005, 1009 (7th Cir. 2002). Dismissal is available under Rule 12(c)
when the Plaintiff pleads an "impenetrable" or "airtight" defense.
*Brownmark Films,* 682 F.3d at 690.

Here, the Complaint does not indicate that Defendant has an
"impenetrable" or "airtight" defense. *Brownmark Films,* 682 F.3d at
690.  There is a set of facts, consistent with the Complaint, upon
which Plaintiff might prevail, and such facts might not have been
available to plead because they require more factual development.
For example, the Complaint does not state that she never communicated

with IDHR; the allegations do not foreclose her filing a charge with IDHR or notifying IDHR of her filing with EEOC. In her brief in opposition to the Motion to Dismiss, Plaintiff argues she expected a response from IDHR after filing with the EEOC. (Dkt. No. 21.) If she had notified EEOC of her IDHR claim, waiting one year since the filing with EEOC for a response from IDHR may serve as sufficient exhaustion. *See* § 7A-102(G)(2). For this reason, the Court finds dismissal under Rule 12(c) inappropriate.

### IV.  CONCLUSION

For the reasons stated herein the Court grants Defendant's Motion to Dismiss [Dkt. No. 18] for lack of subject matter jurisdiction and allows Plaintiff (thirty) 30 days to amend the Complaint.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 8/24/2023

- 13 -